UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                                    **11-CR-397-S**

               v.

JAMES RAYMONDA,

             Defendant.
_____

## POST-HEARING MEMORANDUM
## IN SUPPORT OF MOTION TO SUPPRESS

### Background

      James Raymonda is charged in a five count Indictment.  Count One alleges receipt of

child pornography on January 16, 2011, in violation of 18 U.S.C. §2252A(a)(2)(A).  Counts Two

through Five allege possession of child pornography - on 4 different hard drives - on November

8, 2011, in violation of 18 U.S.C. §2252A(a)(5)(B).  All of these charges arise out of an

investigation commencing in January 2011 culminating in seizure of evidence from Mr.

Raymonda's house 10 months later.


      On March 19, 2012, the defendant filed a motion to suppress evidence seized pursuant to

a search warrant issued by Magistrate Judge H. Kenneth Schroeder, Jr. on October 27, 2011.

(Document 9).  The Government filed a Response to Defendant's Notice of Motion to Suppress

Evidence on April 2, 2012. (Document 10).  Thereafter, defendant filed a Reply on April 5, 2012

(Document 11), and the Government filed a Response to Defendant's Reply on April 23, 2012

(Document 13).  An additional Reply was filed by the defendant on April 26, 2012 with

permission from the Court (Document 14), and the Government responded on May 14, 2012

(Document 15).  A suppression hearing was held on August 7, 2012, August 21, 2012, October

18, 2012, November 1, 2012 and November 18, 2012.  During the course of the hearing the

following witnesses testified:

1.      Adam Ouzer, Special Agent, Homeland Security Investigations;

2.      Christopher Bennett, Special Agent, Homeland Security
        Investigations;

3.      Jeffrey Jajkowski, Police Officer, Buffalo Police
        Department;

4.      Vincent Salvatore, Assistant Special Agent in Charge,
        Homeland Security Investigations;

5.      Gerald Grant, Forensic Investigator, Federal Public
        Defender's Office;

6.      Nicholas DiNicola, Assistant Special Agent in Charge,
        Homeland Security Investigations; and

7.      Edward White, Assistant United States Attorney, United States
        Attorney's Office

A five-volume sequentially numbered transcript of the hearing has been prepared.  Accordingly,

references to the hearing transcript will be made as "T __."


Mr. Raymonda contends that there was no probable cause to support the issuance of the

search warrant, and that the good faith exception to the warrant requirement is inapplicable

because (1) the magistrate judge was knowingly mislead by the material misrepresentations and

omissions in the warrant application; and (2) that the application was so lacking in indicia of

2

probable cause as to render reliance upon it unreasonable.  As a result, the fruits of the search of

73 Henley Road in Buffalo, New York, must be suppressed.

**FACTS**

The following facts are derived from the search warrant application, evidence and

testimony presented at the suppression hearing.  Importantly, the question of the existence of

probable cause for the issuance of the search warrant is solely limited to the information

contained in the search warrant application.  However, the testimony presented at the suppression

hearing serves to establish that the good faith exception does not apply under the circumstances

presented by this case.

The search warrant application was prepared by Adam Ouzer, Special Agent, Homeland

Security Investigations.  *See* Government Exhibit #5.  As detailed in the warrant application,

beginning in January 2011, the San Diego Cyber Crimes Unit conducted an investigation into a

website link posted on the website "www.motherless.com."  Exhibit 5, p. 15.  The suspect link

connected to an image board titled "coolib.org" where individuals had posted images of child

pornography.[1]  Exhibit 5, p. 16.

On February 8, 2011, an agent with the San Diego Cyber Crimes Unit sought a search

warrant in the Southern District of Texas for the contents of the "motherless" website.  Exhibit 5,

---

[1]The warrant application in this case described some of the images posted to the board on
January 13, 2011.  Importantly, it was not alleged that Mr. Raymonda ever posted images to the
board.  Exhibit 5, p. 15.

3

p. 18; T8-9.  Evidence obtained pursuant to the San Diego search warrant revealed approximately 861 suspected child pornography files located in an image directory of coolib.org with associated various IP addresses.  Exhibit 5, p. 18.  According to the warrant application in this case, the San Diego search warrant also provided a "matched entry text document, which separated Internet Protocol (IP) logs with "GET" requests, which are generated when a user's web browser requests/accesses a file from the website to specified images of Directory 55."  Exhibit 5, p. 18.

"The web access logs from this website indicate when a user accessed the website and the specific files the user accessed and received, or attempted to receive."  Exhibit 5, p. 18.  According to Agent Ouzer, the logs indicate that the user "accessed the website and obtained numerous visual depictions of minors engaged in sexually explicit conduct.  Although there is no record that the user accessed an enlarged (full size) image, the logs show more than one incidence of access of thumbnail images by the user."  Exhibit 5, p. 19.

The warrant application here claimed that "the user of the IP address 67.252.174.8 successfully viewed [76] suspect child pornography images contained in Directory 55."  Exhibit 5, p. 20, 24.  Importantly, Agent Ouzer claimed that "the log files also identify the frequency of successful (GET) requests for the suspect images, which provide evidence that the user intended to view the content."  Exhibit 5, p. 20.

Notably absent from Agent Ouzer's affidavit are critical facts that the suspected 76 images were "accessed" by the user of the IP address over the course of 17 seconds of activity.

4

(T 218).  Nor did Agent Ouzer attach the GET logs to the warrant application for the Magistrate

Judge to review.  The GET logs confirm that the activity occurred over just 17 seconds.  *See*

Government Exhibit 4.  Instead, Agent Ouzer opined that "the person(s) residing at the

SUBJECT PREMISES exhibits the common characteristics [] of someone involved in the

distribution, receipt, and possession of child pornography, as evidenced by the facts that are set

forth in this Affidavit, including the fact that (1) the person accessed approximately 76 images

from a website that contains child pornography, and (2) the majority of those image files contains

depictions of [child pornography]."  Exhibit 5, p. 24.  This opinion came despite the fact that

there was no evidence whatsoever of distribution (T 60), no evidence of file sharing (T 60), a

total misrepresentation of the GET log data, and a complete omission of the fact that the alleged

activity occurred over a 17 second period.


      Agent Ouzer testified at the suppression hearing that the GET logs indicate that an

individual using that IP address clicked 76 times on thumbnail images to generate a larger image

of the picture.  (T 18-19).  Agent Ouzer further testified that the log revealed "all the times that

this person tried to or attempted to download images from the website."  His review of the

images revealed that "they were predominantly child pornography."  (T 21).  Agent Ouzer went

on to state "the log wouldn't show that he viewed it.  I mean, if he viewed it and didn't click on

anything, there would be no log.  If he viewed it and then clicked the image requesting the larger

image, that's when a get code would be created, is my understanding."  (T 53).  And that "the logs

indicate that an individual attempted to receive the larger image by clicking on the thumbnail . . .

[and that] all the log shows is that 76 times he clicked a thumbnail."  (T 57).  Agent Ouzer later

testified that the user's activity included "viewing the Coolib web page, and then 76 times

clicking the get link, attempting to retrieve those images."  (T 95-96).

     The testimony of Forensic Investigator, Gerald Grant of the Federal Public Defender's

Office reveals the significant errors in Agent Ouzer's representations.  Mr. Grant testified that the

logs simply indicate that a picture was shown on a webpage.  "If you're on the internet browsing,

and you click on a web page, and that web page comes up on your screen, that web page is a

series of get commands, and it fills out the entire web page to show the user."  (T 220).  There

would be nothing in the GET logs to indicate that a user did anything more than open the page in

a web browser.  The GET logs would not indicate that a user saved images to his computer.  The

GET log does not indicate that a user viewed the entire page - they could simply close it and the

log would be the exact same.  (T 221-222).  Mr. Grant further testified that it would be

impossible for him to review 76 pictures in 17 seconds.  Furthermore, Mr. Grant indicated that

the GET logs could be generated from a link and that they are not a direct indication that a person

specifically sought out this website.  (T 227).  Moreover, the GET logs time stamp simply

indicates when the command was completed, not that they were individual clicks as opposed to a

group click.  (T 229).

     Mr. Grant also testified that any files or attachments or links are copied to the computer's

"internet cache" which is "just a temporary holding area on the computer."  (T 220).  The internet

cache varies depending on the size of the computer and once full starts deleting data based on a

"first in, first out" basis.  (T 220-221).  In Mr. Grant's experience, he has seen the length of time a temporary file has remained in the cache from anywhere from two days to a month.  (T 221).

Five months after obtaining the Texas search warrant, the San Diego agent requested the subscriber information associated with this IP address from Timer Warner Cable.  Their records listed the subscriber as James Raymonda at 73 Henley Road in Buffalo, New York.  (Exhibit 5, p. 19).  Thereafter, it was confirmed through the United States Postal Service that James Raymonda currently received mail at that address and that records checks indicated that James Raymonda and Rachel Lyons are the co-owners of the residence.  Exhibit 5, p. 20.  Local agents conducted surveillance of the residence on October 20, 2011, and performed a wireless check indicating there were no open source networks discovered.  (Exhibit 5, p. 20).  That was the extent of the investigation.

On October 27, 2011, Department of Homeland Security agent Adam Ouzer sought a warrant to search 73 Henley Road in the city of Buffalo, New York, asking permission to seize various items associated with possession of child pornography, including computers, disks, documents and other media devices.

Much of Agent Ouzer's affidavit focuses on his previous investigative experience and training, as well as that of other law enforcement officers, and the actions of child pornographers in a general sense.  He represents, *inter alia*, that individuals who have a sexual interest in children maintain their collections "for several years and are kept close by, usually at the

7

collector's residence, to enable the individual to view the collection, which is valued highly."
(Exhibit 5, p. 23).  He concludes that there is probable cause to believe that fruits of receipt and
possession of child pornography will be found at 75 Henley Road.  (Exhibit 5, p. 32)

The warrant application was presented to Magistrate Judge H. Kenneth Schroeder on
October 27, 2011.  The warrant was executed on November 8, 2011, ten months after the IP
address associated with this home had been determined to have accessed the motherless website
and GET thumbnail photographs of chid pornography.  At the time of execution, no new
incriminating information had been developed since January 16, 2011.  This ten month lapse in
time without corroboration of on-going criminal activity caused this application to be stale when
executed.  As such, the warrant lacked probable cause.

In addition, to the warrant lacking probable cause because of the staleness of the alleged
criminal activity, Agent Ouzer had to have been aware of the staleness of the information since
he was involved in a similar case involving the staleness of a search warrant.  *See United States
v. Jeff Coon*, (10-CR-110-A) (W.D.N.Y.), which involved protracted litigation on the staleness
issue and was decided just months prior to the search warrant application in this case.  On March
31, 2009, Agent Ouzer sought a search warrant for the residence of Jeff Coon in Niagara Falls,
New York (T 74-75).  Mr. Coon filed a motion to suppress evidence gathered as a result of the
search warrant on the basis that warrant lacked probable cause because the information in the
application was stale.  According to the testimony of Agent Nicholas DiNicola, Agent Ouzer was
aware of the filing of the motion since Agent DiNicola had a discussion with Agent Ouzer about

the ongoing suppression hearing in June 2011.  (T 250-251, Defendant's Exhibit G).  Agent

DiNicola also testified that an order directing that a good faith hearing take place would be

discussed with an agent.  (A 254).  Magistrate Judge Scott issued such an order in the *Coon*

matter on November 8, 2010.  (Defendant's Exhibit B).  Thereafter, United States District Court

Judge Richard J. Arcara issued a Decision and Order on May 16, 2011, finding that the warrant

application in *Coon* lacked probable cause because the information was stale.  (Defendant's

Exhibit C).  Despite the fact that Agent Ouzer testified that he was unaware of the issue of

staleness surrounding the *Coon* case (T 77), Assistant United States Attorney Edward White

testified that he would have informed Agent Ouzer of the issue since it is his practice to keep

agents apprised of the status of a case in the pretrial stages.  (T 282, 299).  Although Assistant

United States Attorney White did not recall his specific conversation with Agent Ouzer regarding

Judge Arcara's Decision and Order dated May 16, 2011, he "is sure he would have told him that

the decision occurred . . . [and] that at most, if I would have said anything, it would have been

that the warrant was stale, but up – but found the good faith exception applied, so he denied the

motion to suppress."  (T 309).  Despite Judge Arcara's decision in May 2011, Agent Ouzer

signed the warrant application in this case in October 2011, alleging similarly stale information

as the basis for the search warrant application.

**ARGUMENT**

**A.      The Affidavit Lacked Probable Cause Because the Information Was Stale and Uncorroborated**

Probable cause to search a place exists if the issuing judge finds a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir.1991) (*quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  The information supporting the search warrant must be current enough to demonstrate that probable cause exists at the time of the proposed search.  "While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206 (1932).  "[T]he principle factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." *Diamondstone v. Macaluso*, 148 F.3d 113, 124 (2d Cir. 1988), *citing United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981).

In examining the staleness concept, the Second Circuit has explained that:

> In determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, i.e., true at the time of the application, or whether instead it has become stale.  "[T]he principle factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law.  Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the

> passage of time between the last described act and the presentation
> of the application becomes less significant." *United States v.*
> *Martino*, 664 F.2d 860, 867 (2d Cir. 1981) . . . .

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).  The facts must be sufficiently close in

time to the issuance of the warrant and the search so that probable cause can be said to exist at

the time of the search - not as of some time in the past.  *See United States v. Wagner*, 989 F.2d

69, 75 (2d Cir. 1993)  (holding that six week delay between drug purchase and search warrant

affidavit was stale).  The *Wagner* Court went on to explain:

> Facts of past criminal activity that by themselves are too stale can
> be sufficient if the affidavit also establishes a pattern of continuing
> criminal activity so there is reason to believe that the cited activity
> was probably not a one-time occurrence.

*Id.* at 75 (citations omitted).


The information presented to Judge Schroeder in the search warrant application was

clearly stale and not of a sufficiently recent vintage to allow for a finding of probable cause.  *See*

*e.g., United States v. Thomas*, 757 F.2d 1359, 1367-68 (2d Cir. 1985).  There was no evidence

typically present in child pornography cases to suggest any on-going criminal activity.  For

example, continued downloading or evidence of exchange of child pornography was not

explored.  There was no evidence of chatting with others on child pornography websites or

utilizing multiple child pornography sites or any other indicia of continued criminal activity.  *See*

*United States v. Greathouse*, 297 F.Supp.2d 1264 (D. Ore. 2003) (finding that a tip that the

suspect's computer one year earlier contained child pornography was stale, and thus did not

provide probable cause for search warrant for seizure of computer, despite investigating officer's

affidavit stating child pornography collectors routinely maintained their materials for long

periods of time, where the officer did not specify the basis for his statement, and there was no

evidence that defendant was a pedophile or that he engaged in any ongoing criminal activity).


Recently, in the case of *United States v. Jeff Coon*, 2011 WL 1871165, *5 (W.D.N.Y.

May 16, 2011), United States District Court Judge Richard J. Arcara found a factually similar

warrant provided by Agent Ouzer to have lacked probable cause.  The warrant, which was

executed 11 months after a child pornography file was downloaded from a particular IP address,

lacked probable cause because it was stale.  The officers there took the same steps it did here,

namely, they verified the IP address, subscriber name, physical address, and conducted a public

records checks.  This case is virtually identical with 10 months having elapsed between the

evidence of criminal activity and the issuance of the warrant and again, no evidence of ongoing

criminal activity.


After Judge Arcara ruled on the *Coon* case, he made a similar finding in *United States v.*

*Ronald Ohlson*, (11-CR-225-A) (March 16, 2012) when he again found a warrant lacked

probable cause due to staleness.  There, during the year that elapsed from the time the IP address

associated with defendant Ohlson's residence accessed the images of child pornography to the

time the warrant was executed, no other, "fresher evidence of a child pornography offense

associated with the same IP address or with the defendant's residence was developed and

presented to the Magistrate Judge who authorized the search warrant for the residence." (*Id.*,

Document 21, p. 4)  In so doing, the Court acknowledged that child pornography images remain

on a computer for a long period of time, but that "an essential question in cases like this is not only whether child pornography images or remnants of such images remain on a computer - it is clear that they do - an essential question is also whether the computer that accessed the images remains at the residence that is to be searched."  (*Id.*, Document 21, p. 6).  The Court concluded that the one year lapse in time without corroboration made the warrant stale.  Moreover, the agent's opinion that child pornography would still be on the computer was not sufficient to cure the staleness problem.  (*Id.*, Document 21, p. 8).

This Court is likewise encouraged to find that the ten month old information here, without intervening corroborative criminal activity, is too stale such that probable cause was lacking.

**B.   The Good Faith Exception Does Not Apply Here**

Since there was insufficient probable cause for the search warrant, the only remaining question is whether or not the exclusionary rule applies.  The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens.  *United States v. Leon*, 468 U.S. 897, 919 (1984).  Where, a search warrant violates the Fourth Amendment, the items seized pursuant thereto need not be suppressed if the Government sustains its burden of demonstrating that the officers who executed the warrant acted in "objective good faith."  *See United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) (*citing Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 703 (2009)) and *quoting Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier*, 422 U.S. 531, 539 (1975) (*quoting Michigan v. Tucker*, 417 U.S. 433, 447 (1974)). "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir.1996). By excluding evidence seized as a result of an unconstitutional search and seizure, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Peltier*, 422 U.S. at 539. Because the "purpose of the exclusionary rule is to deter unlawful police conduct," the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment. *Leon*, 468 U.S. at 919 (*quoting Peltier*, 422 U.S. at 542).

In determining whether the "good faith" exception applies, the court must "eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant," *Leon*, 468 U.S. at 922, n. 23, and insist that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues . . . be objectively reasonable." *Id.* at 922-23 (emphasis added). "Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the standard of reasonableness . . . is an objective one . . . that requires officers to have a reasonable knowledge of what the law prohibits." *George*, 975 F. 2d at 77. Thus, the "good-faith" inquiry is confined to the objectively ascertainable question whether a reasonably

14

well-trained officer would have known that the search was illegal despite the magistrate's

authorization." *Leon,* 468 U.S. at 922, n. 23.


There are four circumstances where this exception to the exclusionary rule would not

apply:

    (1)    where the issuing magistrate has been knowingly mislead;

    (2)    where the issuing magistrate wholly abandons his or her judicial rule;

    (3)    where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and

    (4)    where the warrant is so facially deficient that reliance upon it is unreasonable.

*Clark*, 638 F.3d at 100 (*citing United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) and

*Leon*, 468 U.S. at 923). While any one of these grounds is sufficient to negate good faith, here

two grounds apply. First, the magistrate was knowingly mislead in the warrant application, and

second, the warrant was so lacking in probable cause as to render reliance upon it unreasonable.

As a result, suppression of the evidence seized during the search here is warranted.


       **i.**    **Magistrate Judge Schroeder was knowingly mislead in the warrant application**

As detailed in the factual recitation, Agent Ouzer both omitted critical facts known to him

at the time of the warrant application, and misrepresented other facts detailed in the application.

Specifically, Agent Ouzer neglected to tell Magistrate Judge Schroeder that the suspect activity

in the affidavit occurred in just 17 seconds. Nor did Agent Ouzer include the GET logs in the

warrant application for the Magistrate to review. In addition, Agent Ouzer mislead the issuing

magistrate as to the meaning of the GET logs.  Instead, Agent Ouzer left the impression that the

user purposely sought out 76 images of child pornography.


As evidenced by the testimony of Forensic Investigator, Gerald Grant, Agent Ouzer made

significant errors in his representation as to the meaning of the GET logs.  The logs simply

indicate that the webbrowser opened a page with 76 images on it - not that the user had

knowledge before opening the link that the pictures were of child pornography, nor that user

clicked purposely on 76 thumbnail images to obtain larger pictures.  There would be nothing in

the GET logs to indicate that a user did anything more than open the page in a web browser.  The

GET logs would not indicate that a user saved images to his computer nor even that the user

viewed the entire page.  The user could simply close the page, and the log would look the same.

None of this information about the GET logs was conveyed to the issuing magistrate.


In this regard, the case is similar to *United States v. Reilly*, (76 F.3d 1271, 1280 (2d Cir.),

*aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996)) where the Second Circuit found that the good faith

exception did not apply because the agent had omitted important facts from the warrant

application, leading it to conclude that the bare bones affidavit was "almost calculated to

mislead" the magistrate judge.  In *Reilly*, the officers failed to give the judge complete

information concerning the location of growing marijuana plants which, if accurately described,

would have thrown into question their ability to have viewed them from where they claimed.  In

particular, they failed to mention that the plants were growing several hundred feet from the road,

in an area that was obviously considered to be private property, and that their view was

obstructed by trees.

> [I]nformation about the distances involved, the layout, conditions,
> and other like particulars of Reilly's land was crucial. Without it,
> the issuing judge could not possibly make a valid assessment of the
> legality of the warrant that he was asked to issue.  The good faith
> exception to the exclusionary rule does not protect searches by
> officers who fail to provide all potentially adverse information to
> the issuing judge, and for that reason, it does not apply here.

*Id*. at 1280.


Likewise, by omitting key information known to the investigating agents here, Magistrate

Judge Schroeder was deprived of information crucial to the assessment of the legality of the

warrant.  The key information lacking was the fact that the images were retrieved in only 17

seconds of activity, suggesting that the access of the image may not have been as purposeful as

the agents led the court to believe.


Furthermore, the agents led the Court to believe that the GET logs meant more about the

user's activity than the logs actually indicate.  By omitting the 17 second length of activity and

affirming that the logs indicate a "frequency of successful (GET) requests for the suspect

images," the Court was led to believe that the activity was in fact purposeful, when that

conclusion was not warranted.  The Court was not told that the same log could have been

generated simply by a single click on a link, without a user actually intending to view child

pornography.  Simply stated, the exact same log would be generated by clicking on a link to open

a webpage.  Moreover, the issuing magistrate was not told that the internet cache - the location

on the computer where these files would have been stored - would have been overwritten in at most approximately one month.

In addition, Agent Ouzer opined that "the person(s) residing at the SUBJECT PREMISES exhibits the common characteristics [] of someone involved in the distribution, receipt, and possession of child pornography, as evidenced by the facts that are set forth in this Affidavit, including the fact that (1) the person accessed approximately 76 images from a website that contains child pornography, and (2) the majority of those image files contains depictions of [child pornography]."  Exhibit 5, p. 24.  This opinion came despite the fact that there was no evidence whatsoever of distribution, no evidence of file sharing, a total misrepresentation of the GET log data, and a complete omission of the fact that the alleged activity occurred over a 17 second period.  This misrepresentation is critical to the government's reliance on the good faith exception to save this warrant.

The omission of such critical facts put this case in line with *United States v. McQuiller* (10-CR-190) (W.D.N.Y. 2012) where Chief U.S. District Court Judge William M. Skretny adopted the Report and Recommendation finding that the good faith exception did not apply because the detective who made the application should have provided dates of the criminal activity, or lack thereof:

> Since Detective Palmieri failed to provide the information to the issuing judge, he cannot now claim that he acted in good faith in executing the search warrant so as to bring into play the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984).  Therefore, the search warrant was facially and incurably

> defective as a matter of law and because the defect was contributed
> to by the inaction of Detective Palmieri when he applied for the
> search warrant, Leon does not apply."

McQuiller, 10-cr-190, Document 28, p. 9).

Simply put, here, the magistrate judge here was knowingly misled both by the omission of critical facts and the misrepresentation of other facts, such that this Court should suppress the evidence seized in connection with the warrant execution.

> **ii.     The application is so lacking in indicia of probable
> cause as to render reliance upon it unreasonable**

As detailed above, the information in the warrant application was stale, and obviously so. Given the 10 month lapse in time from the initial investigation into the alleged activity and the issuance of the search warrant, coupled with the activity being a single instance, the application was so lacking in probable cause that reliance upon it was unreasonable.

The ten months time lapse is critical in a case where the suspect activity lasted for such a short period of time - one 17 second event - and where there was no evidence that the images or files were saved to anything other than the computer's internet cache file.  As testified to by Mr. Grant, the internet cache file is overwritten on a first in, first out basis and in his experience files only remain in the internet cache for as little as two days to a month.  On these facts, the search warrant application was completely lacking in probable cause such that any reliance upon it was unreasonable.

There is a clearly recognized line of case which hold the experience of the affiant to be a factor in determining whether the warrant is sought in good faith.  In *United States v. Zimmerman*, 277 F.3d 426 (3rd Cir. 2002) , the Third Circuit found insufficient probable cause to search for child pornography where the officer knew that the information linking the defendant to adult pornography had occurred six to ten months earlier and there was no indication whatsoever that he continuously acquired or planned to acquire any other pornography.   "[P]articularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable."  It went on to state that "[w]hen the Supreme Court announced the good faith exception in Leon, it weakened the exclusionary rule, but it did not eviscerate it." *Id.*  at  436

The *Zimmerman* court also rejected the Government's argument that law enforcement officers are not attorneys and that the agent's mistake was a reasonable one:

> Any reasonably well-trained officer in the "station house shop would recognize as clearly insufficient" the affidavit that was presented to the magistrate. *United States v. Williams*, 3 F.3d 69, 74 (3d  Cir.1993). When a police officer has "not presented a colorable showing [of probable cause], and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply."  *United States v. Hove*, 848 F.2d 137, 140 (9th Cir.1988).

*Zimmerman*, id. at 437.

Moreover, *Leon* "requires officers to have a reasonable knowledge of what the law prohibits." *Leon*, 468 U.S. at 919-20 n. 20.  No objectively reasonable police officer could believe that, despite the magistrate's authorization, the law did not prohibit a search of Raymonda's home for child pornography.  Agent Ouzer should have been aware when he submitted his affidavit to Judge Schroeder on October 27, 2011, that the affidavit was deficient. He knew this because the affidavit offered the same stale information that was offered in the *Coon* case, where he also was the affiant requesting the warrant.  He would have known this because by the time he submitted the affidavit to Judge Schroeder on this case, the *Coon* decision finding staleness under similar facts had already been finalized on May 16, 2011.

More to the point, if, as affiant, he affirmatively relies on his experience, as he does at page 23 of his affidavit, in advocating for the warrant, then he should likewise be accountable to the court based on his experience when he represents that probable cause is present.  In other words, he should not be able to hide behind an argument that because Judge Schroeder signed the warrant, he reasonably believed it was valid, given his knowledge of the *Coon* case.

Given the total lack in indicia of probable cause in the warrant, reliance upon it was unreasonable.

**CONCLUSION**

For the foregoing reasons, Mr. Raymonda requests that this Court grant in its entirety his

motion to suppress (Docket #9).


**DATED:**        Buffalo, New York, January 22, 2013.

                                   Respectfully submitted,


                                   **/s/Kimberly A. Schechter**
                                   Kimberly A. Schechter
                                   Assistant Federal Public Defender
                                   Federal Public Defender's Office
                                   300 Pearl Street, Suite 200
                                   Buffalo, New York 14202
                                   (716) 551-3341, (716) 551-3346 Fax
                                   kimberly_schechter@fd.org
                                   Counsel for Defendant James Raymonda


**To:**    Fauzia K. Mattingly
           Assistant United States Attorney
           Western District of New York
           138 Delaware Avenue, Federal Centre
           Buffalo, New York   14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                    **11-CR-397-S**

       v.

JAMES RAYMONDA,

       Defendant.

_____

## CERTIFICATE OF SERVICE

I hereby certify that on **January 22, 2013**, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

    1.      Fauzia K. Mattingly
             Assistant United States Attorney
             Western District of New York
             138 Delaware Avenue, Federal Centre
             Buffalo, New York 14202

                             **/s/ Joanne Sabatino**
                             Joanne Sabatino, Legal Assistant
                             Federal Public Defender's Office